# THOMAS and HOWARD, trustees, &c., v. DAVIS.

1. Where a mother, in contemplation of a second marriage, with the assent of her intended husband, makes a settlement upon her infant daughter, the settlement is not void as against the husband, or his creditors, merely because the deed by which the property is thus conveyed, disposes of a *contingent remainder* therein to a third person, without the approbation of the husband.

2. A deed, by which personal property is conveyed to trustees for the use of an infant child, is not a mortgage, deed of trust, or legal incumbrance, within the meaning of the act of 1823, "To prevent fraudulent conveyances;" and does not become liable to the debts of the party in possession, although the deed has not been recorded.

3. The second section of the statute of frauds, which declares, that a loan of personal property, accompanied with the uninterrupted possession for the space of three years, shall be fraudulent as to the creditors and purchasers of the loanee, does not apply to a case where a step-father takes and retains possession of property settled upon trustees for the use of an infant daughter, by her mother, without the trustees assent, and the latter filed their bill for its recovery within the three years, which is still in a course of prosecution.

4. Where a deed conveys to trustees, for the use of a daughter, an undivided moiety of real and personal estate, of great value, the grantor and trustees cannot assent to a division of it, through the medium of arbitrators, so as to prevent the creditors of the former, from selling, under execution, his moiety of any part of the property. But it is competent for a court of chancery to cause a division to be made, or to arrest the action of the execution, until the rights of the *cestui que trust* are equitably adjusted.

WRIT of error to the circuit court of Russell.

THIS was a proceeding under the statute for the trial of the right of property. It is shown by the record, that a writ of *fieri facias,* in favor of the plaintiff, issued on a judgment rendered by the circuit court of Russell, against William D. Hargrove for six hundred and thirty 75-100 dollars, was levied on slaves of the following names, &c., viz: Nicey, Patsey, Mary and her three children, Alexander, Ardesa and Chloe; Becky, Polita, Louisa and child, Sinda, Harriet and her three children, Lucinda, Anderson and an infant, Juliana. On the 6th of June, 1842, the defendants in error made an affidavit, that these slaves were their

property, as trustees for Mary Sowell Woolfolk, and executed a bond with surety, as required by law.

An issue was made up for the purpose of trying. whether the property levied on was subject to the sat sfaction of the execution; which, being submitted to a jury, was found in favor of the claimants; and judgment was rendered accordingly.

From a bill of exceptions, sealed at the instance of the plaintiff, it appears, that he produced on the trial his execution, with the levy thereon endorsed, proved the value of the slaves in question ; and that when levied on, they were in the possession of the defendant in execution, in the county of Russell, and had been for more than three years previously. The plaint.ff further proved, that two other executions had issued on his judgment, the one on the first of June, 1841, and the other on the 8th March, 1842 ; both of which were regularly returned by the sheriff of Russell.

The claimants then adduced as evidence, a deed of gift, executed in the county of Muscogee, in the State of Georgia, on the 8th day of June, 1834, by Sophia W. Woolfolk, [now the wife of the defendant in execution); which recites, that, in consideration of the love and affection which she had for her daughter, Mary Sowell Woolfolk, and, also, the trust and confidence which she reposed in the claimants, that she thereby gave and granted unto the latter, their executors, &c., in trust for said daughter, one negro girl, named Mary, with her future increase. In addition thereto, she, in the same manner, gave one half of her real and personal estate then in the parish of St. Mary's, in the State of Louisiana. The claimants were to have and to hold the same in trust, as aforesaid, against the donor and every other person, from the date of the deed. It was, however, provided, that the property in Louisiana was to remain there as long as the trustees might think the interest of the donee required. The deed further declares, that the " property was to be used for the use and enjoyment" of the donor's daughter ; and the trustees were authorized " to remove it, or dispose of it as they may think most conducive to her interest."

The deed contains an additional clause as follows : " Now, in the event that my said daughter, Mary Sowell, should die without issue, then, and in that case, I give and grant unto my nephew, Sowell W. Thweat, the said property herein-before de-

:scribed, in consideration of the love and affection which I have for him."

It was proved, that, immediately upon the execution of this deed, it was delivered to Howard, one of the trustees, and, shortly thereafter, recorded in the clerk's office of the superior court of Muscogee county, in Georgia ; but it was not shown, that the laws of that State required such a deed to be registered. *Further*, at the time of its execution, the donor and her daughter, the donee, resided with her brother in-law, (Thweat,) who subscribed the deed as an attesting witness. The negro girl Mary was present, but not delivered to the trustees. The residue of the property was in possession of the trustee, Thomas, in the State of Louisiana.

The claimants also proved, that, early in the year 1838, Thomas and the defendant in execution removed the property that was in Louisiana to Muscogee county, in Georgia, where the latter took it into his possession against the wishes of the trustees. They filed a bill in equity against him to injoin him from bringing it into Alabama ; and, after its removal, they filed a second bill in order to recover it from him. This latter bill is still pending in the court of chancery for Russell county. There was no proof that the deed of gift had ever been recorded in the county court of Russell ; although the trustees lived but fourteen miles from the court-house of that county, in the State of Georgia.

It was further proved, that the trustees and the defendant in execution, about the middle of May, 1842, agreed to a division of the property, in which the latter and the donee of his wife were jointly interested. By the terms of the division, certain negroes were set apart, by arbitrators mutually chosen, to the defendant in execution and the trustees of the donee. That the sheriff of Russell county had since sold, under executions against the former, the slaves allotted to him on the division ; and that the slaves in question were some of those that were set apart to the trustees. There was no proof that the division had ever been recorded in the county court of Russell, or that it was perfected at the time it was made ; but it was understood, that half of the property set apart for the donee, was to remain in the possession of the defendant in execution for further decision by the court of chancery. The suit in chancery had not been decided at the time of the trial.

The deed of gift was executed after the marriage between the do-
nor and defendant in execution had been agreed on, and on the
night previous to its consummation. The latter assented to the
deed, so far as it conveyed one-half of the property therein refer-
red to, to the donee : but did not approve of the last clause there-
in, which provided the manner in which the donee's share should
be disposed of, in the event of her death without issue. In fact,
there was no evidence that the defendant in execution was
aware, that the deed contained such a clause until after his mar-
riage.

The plaintiff's counsel prayed the court to charge the jury as
follows :

1. That, although the defendant in execution may have assent-
ed to the provision made by the deed of gift for the daughter of
his wife by a former marriage, yet if the last clause in the deed,
which gave the donee's share to a third person in the event of her
death, was inserted without the defendant's knowledge or con-
sent, and, after the donor's engagement to marry him, it was such
a fraud on his marital rights as would render the deed void as to
creditors.

2. If they believe the deed of gift was executed in the State of
Georgia, to make it valid in Alabama against creditors, it should
have been recorded in Russell county, where the property was,
within one year after the defendant removed there with it ; and if
it remained with the defendant for a longer period in that county,
with the knowledge of the trustees, and the deed was not placed
on the records of the county court thereof, it was void and inope-
rative as to the plaintiff.

3. If the jury believe, that the property in question was in the
possession of the defendant in execution, in the county of Russell,
for more than three years before the levy thereon, and the trus-
tees, with a knowledge thereof, did not, within that time, have the
deed recorded in the county court of that county, then the same
became liable to satisfy the plaintiff's execution.

4. The division of the slaves, made by consent of the trustees
and defendant in execution, did not divest the lien of the execution
on the moiety set apart for the trustees of the donee.

The court refused to charge the jury as prayed ; but instruct-
ed them,

1. If they believed the possession of the slaves by the defend-

ant in execution, was adverse to the claim of the trustees under the deed, and that while the slaves were in Georgia, they endeavored to prevent the defendant from removing them into Alabama, by a bill in chancery, and that he afterwards removed them into Russell county against their will; *and further*, that the trustees subsequently filed a bill in equity, in order to recover the possession of the slaves—then there was no necessity for recording the deed in Russell county, although the defendant in execution may have there retained their possession for more than three years previous to the levy in question.

2. If they believed that the claimants and the defendant in execution divided the property embraced by the deed, and that the portion of the latter had been sold to pay his debts, it was for them to determine the justice of condemning the other half.

For the refusal to charge the jury as prayed, and for the instructions given, the plaintiff excepted, &c.

J. E. BELSER and S. HEYDENFELDT, for the plaintiff in error, made the following points:

1. The clause of the deed which disposes of the property given to the donee, was made after a treaty of marriage between the donor and the defendant in execution, and must be regarded in law as a fraud upon his marital rights. The consequence is, that the entire deed is void. [Newland on Con. 425; 4 Cranch's Rep. 60; 2 Mason C. C. Rep. 478; 4 Wash. C. C. Rep. 336; Harris et al. v. Bradford, 4 Ala. Rep. 214.] This being the case, all the property embraced in the deed vested in the husband, and became subject to the payment of his debts. [1 Ala. Rep. N. S. 102; 2 id. 592.]

2. The law of this State required the deed of trust to be recorded within twelve months after the property it disposed of was removed here; and the omission to do this, as against the creditors of the defendant in execution, put an end to the rights of the donee. [Clay's Dig. 254.] The case of Swift v. Fitzhugh, [9 Porter's Rep. 58,] was determined upon a different State of facts, and is not adverse to such a conclusion.

3. But if registration was not required in one year, the possession of the defendant in execution was of such a character, as required the deed to be recorded within three years after it com-

menced, in order to preserve the donee's property in the slaves. [Clay's Dig. 254; 2 Ala. Rep. 648, 686.]

If trustees omit, through negligence to perform their duties, either by failing to have a deed recorded, or in any other respect, and a loss is thereby occasioned, they are responsible to their *cestuis que trust;* but the rights of the latter in favor of the rights of the creditors of the donor, or grantor may be lost. [1 Ala. Rep. N. S. 20.]

4. There was no such delivery of the property which was in Georgia and Louisiana, when the deed was executed, as was necessary to make it operative against the defendant in execution, or his creditors. In the absence of all proof, it will be intended, that the laws of these States must be the same as the common law of Alabama. [1 Stewt. & P. Rep. 57; 1 Ala. Rep. 52; 2 id. 653, 673.]

5. The division made of the property between the claimants and the defendant in execution, was inoperative to divest the legal title of the latter, in an undivided moiety of all the property; and of course could not defeat the lien of the plaintiff's execution. The plaintiff was no party to the division, and could not be prejudiced by it.

6. The second charge to the jury is erroneous, because it refers to them the decision of a legal question.

G. GOLDTHWAITE, for the defendants.

1. The deed of gift was made in the performance of a moral duty, and would have been good, although the husband had not been informed of it previous to his marriage. [1 Story's Eq. 273; 7 Cond. Eng. Ch. Rep. 194.] But the defendant in execution was advised of it, and assented to it, as it respects his wife and her daughter ; and thus far it is certainly good. [Scott v. Duncan, 4 Dev. Eq. Rep 403.] If the limitation over was such a fraud as would avoid the deed, a court of equity should be appealed to by the husband himself to set it aside, not by his creditors ; and that court could effectuate the intention of the parties. [2 Lomax's Dig. 303 to 307 ; 4 Dev. Eq. Rep. 403.]

2 · The possession of the property by the defendant in execution, was, in no sense, a loan or hire, and is unaffected by the statute of frauds. In fact, it was not a permissive, but an adverse

Thomas and Howard, trustees, &c., v. Davis.

possession; and in order to preserve the rights of the donee, there was no necessity for registering the deed.

3. The division of the property, made by arbitrators chosen by the claimants and defendant in execution, was effectual to divest all the title which the latter had in the part that was allotted to the former. It was as valid for all purposes as if the division had been made by a court of chancery, and must operate retrospectively, so as to divest the lien of the execution. [3 Johns. Ch. Rep. 481.]

4. The last charge may be obnoxious to the criticism of the plaintiff's counsel, but if the partition was valid, the court should have told the jury that the property was not liable to the plaintiff's execution. In this view, the charge given is more favorable to the plaintiff than he had a right to ask.

COLLIER, C. J.—1. It may be stated, as a general rule, that where the wife disposes of her property to a third person, without the knowledge of her husband, after the contract of marriage, and before its solemnization, the transaction will be considered as fraudulent against the latter. [2 P. Wms. Rep. 274; 1 Mylne & K. Rep. 510.] But the court has sometimes taken into consideration the object of the conveyance, and the situation of the husband in point of property, and relaxed the rule. [Meigs' Rep. 142.]

In the present case, it is admitted, that the settlement made by Mrs. Hargrove, previous to her marriage, upon her daughter, was assented to by her husband; but it is insisted, that the ulterior disposition of the daughter's portion, was a fraud upon his marital rights, and so taints the transaction as to avoid it *in toto*. This conclusion, we think, cannot be maintained. It is difficult to conceive how the daughter, the innocent beneficiary of her mother's bounty, can be affected by a gift which cannot take effect until after her death; and then only upon a contingency which may never happen. The law will not indulge the presumption, that the contingent gift will ever vest in possession, but rather presumes that the property will remain with the daughter and her descendants *ad infinitum*. If, however, the vesting of the remainder depended upon no other event but the ceaseless and certain progress of time, still the rights of the first donee would be unaffected by the imputed fraud on the part of the mother.

The daughter was incompetent, in consequence of her tender years, to participate in any scheme injurious to the marital rights of the defendant in execution ; and, in fact, nothing of the kind is pretended. She was entirely passive, receiving the provision which her mother made for her with the assent of an intended husband ; and it is not now for the latter to object that the daughter shall claim nothing under the deed, because the mother thought proper to dispose of a contingent remainder in the same property.

But are the rights of the defendant in execution in any manner impaired, because the gift embraces a person not contemplated by him. Suppose the gift had been absolutely to the daughter, or to herself and issue, the husband might, perhaps, through his wife, if the daughter died *sole* and without issue, have become entitled to the property. Upon the death of the daughter, thus circumstanced, *if the husband have rights*, it will be competent for him to assert them, against the person claiming in remainder; but the gift to the first donee being unobjectionable in itself, must be supported. Indeed, this conclusion seems so clear, that it results from a mere statement of the proposition, and requires no argument for its elucidation.

2. The first section of the act of 1823, "to prevent fraudulent conveyances," [Clay's Dig. 255, § 4,] enacts that, "all property mortgaged, or under any deed of trust, or other legal incumbrance, which may afterwards be removed to any county in this State, shall be liable to the payment of any debts, which the holder of such mortgaged property may contract, after his settlement in such county;" unless the mortgage, &c. shall be duly recorded in the clerk's office of the county court of the county to which the property is removed within six months. Where the property is brought from another State into this, twelve months is allowed for recording the mortgage, &c. "after such settlement as aforesaid."

To bring a case within this statute, it should be shown, that the debt in question was contracted, after the settlement of the holder of "the mortgaged property" in the county to which it was removed. In the case before us, there is no proof of the time when, or how, the liability was incurred, upon which the plaintiff's judgment was rendered; and although the slaves were in the possession of the defendant in execution in the county of Rus-

sell, yet perhaps the proof is defective in not showing that he himself had settled there.  But if these defects were all removed, we should say, that the deed in question, does not come within the act.  The statute, as its terms indicate, was intended to apply to deeds or other legal incumbrance, by which personal property was charged with a debt or duty.  True, in the present case the slaves were conveyed by the mother, in trust for her daughter, yet they cannot, according to the common acceptation of terms, be said to be "under any deed of trust."  They are under no incumbrance; the right of the mother has passed from her, as fully as if they had been conveyed by an absolute deed, in which no trustees were interposed; the legal title vests in the trustees, and the equitable title in the *cestui que trust.*  So that in no just sense can the slaves be said to be in any manner incumbered.  The defendant in execution does not claim a right for himself, or any one else, *under a mortgage, deed of trust, or other incumbrance,* but the facts when denuded, show that he removed and retained the slaves as a mere trespasser.

But if the terms of the statute were so extensive as to embrace within its letter such a deed as the one before us, yet if it allowed of any latitude of construction, we should be strongly disinclined to apply it, so as to defeat the estates of infants, or others who are presumed to be incompetent to attend to their own interests. [Swift v. Fitzhugh. 9 Porter's Rep. 39.]

3.  The second section of the statute of frauds, among other things, declares that "where any loan of goods and chattels shall be pretended to have been made to any person, with whom, or those claiming under him, possession shall have remained by the space of three years, without demand, made and pursued by due course of law, on the part of the pretended lender; or where any reservation or limitation shall be pretended to have been made of a use or property by way of condition, reversion, remainder, or otherwise, in goods or chattels, the possession whereof shall have remained in another as aforesaid; the same shall be taken as to the creditors and purchasers of the persons aforesaid, so remaining in possession, to be fraudulent within this act; and that the absolute property is with the possession; unless such loan, reservation, limitation or property, were declared by will, or by deed in writing, proved and recorded as aforesaid." [Clay's Dig. 255.]

The facts of this case do not come within the provisions of the

16

act cited.    It is explicitly shown, that a bill was filed to prevent
the removal of the slaves from Georgia to this State, and that af-
ter their removal, a suit in chancery was brought against the
defendant in execution. for their recovery by the claimants: *And
further*, that his possession commenced, and has been continued,
without their assent or approbation.    In Myers v. Peek's adm'r,
[2 Ala. Rep. 627,] it was held, that the statute applied, "where
the owner of personal property voluntarily parts with the posses-
sion to another, either with or without an express contract." Here
the possession was obtained against the consent of the trustees;
and if the rights of the *cestui que trust* could be in any manner
affected by it under a different state of circumstances, the as-
sertion of a claim by suit, and its continued prosecution, would
bring her within the saving of the act, and serve as a substitute
for registration.    But, if the facts were otherwise, and the pos-
session of the defendant in execution had actually been permit-
ted by the trustees for three years, without suit, could his credi-
tors or purchasers prevail against an infant?

4. It may be laid down generally, that the powers of a trus-
tee depend upon the nature and purposes of the trust.    *Under
particular circumstances*, it is said, he is capable of exercising
the discretionary powers of the *bona fide* proprietor; otherwise,
the trust estate might be injuriously affected.    The necessity of
the case may demand an immediate decision, as where the *cestui
que trust* is under disability, or not yet in existence, &c.    "The
alternative of instituting a suit for the mere purpose of consulting
the court, would always be attended with considerable expense,
and it may be an expense wholly disproportioned to the impor-
tance of the occasion.    It is evidently in furtherance of the *ces-
tui que trust's* own interest, that where the circumstances of the
case require it, the trustee should be at liberty to exercise a rea-
sonable discretionary power-"    [Lewin on Trusts and Trustees,
412–3; 2 Story's Eq. 241–2–3; Willis on Trustees, 127.]    It is
for these reasons said to be a rule in equity, that what is compel-
lable by suit, is equally valid, if done by the trustee *without suit*.
Thus it has been held, that an executor may appropriate a lega-
cy, where the appropriation is such as the court itself would have
directed.    So, where the parent is unable to maintain his child,
the interest of a legacy, or where that is inconsiderable, a part of
the principal, has been been applied to that purpose.    [Lewin on

Trusts, &c. 413–4. The learned author last cited, remarks, "The rule, that what is compellable by suit, is equally valid if done without suit, must be received with this qualification, that if a suit has been already instituted for the execution of the trust, that takes the administration out of the trustee and transfers it to the court: the original power of the trustee is from that moment paralized, and the authority of the court must sanction every subsequent proceeding." [Id. 417.] In respect to the rule, Mr Justice Story says, it "is a doctrine requiring many qualifications, and by no means to be generally relied on for safety." [2 Vol. Eq. 510.]

It is stated as a fundamental maxim in equity, that no act of the trustees, except a conveyance to a purchaser for a valuable consideration, without notice, can vary or prejudice the rights of those beneficially interested; but the trustee will be compelled in equity to make good the trust. [Willis on Trustees, 167, 8. See also, Fletcher on Trustees, 48–9.]

The division of the joint property between the trustees of the donee and the husband of her mother, would materially affect the rights of the parties in interest, by giving a several property in one moiety to each. The purposes of the trust, it would seem, does not require, that the trustees should possess the power to assent to such an arrangement, so as to bind conclusively, their *cestui que trust.* If beneficial for her, it is possible that a court of equity might sanction their act, but without such judicial approbation, it is conceived that it could not operate as a definitive adjustment of her rights. Whether the division is prejudicial to the *cestui que trust,* is an inquiry which could not have been made on the trial of this cause; trusts are among the subjects of exclusive jurisdiction in equity, and that court is the appropriate arbiter to settle the interest of parties where they are involved. This view does not at all conflict with the idea that trustees may exercise such discretionary powers as are necessary and compatible with the trust committed to them, it only shows that their discretion is not unlimited, and in some cases where the emergency is not pressing, and the interests at stake are ce-extensive with the trust itself, the trustee should seek the advice of a court of chancery. Here, the duty of the trustees, as in other cases, is to protect the property for the benefit of their *cestui que trust,* and not to relinquish

the right of the latter to a part, that her right to the residue may be confirmed; yet such is the object proposed by the division.

The execution in favor of the plaintiff, was a lien on the undivided moiety of Hargrove, upon the hypothesis, that he became the legal proprietor of the interest of his wife in the slaves; and that lien canot be defeated by the division that was made. It is wholly immaterial, so far as it respects the present case, whether his share of the property has been sold by other judgment creditors for the payment of his debts; the joint interest of the *cestui que trust* is unaffected by the change of possession. That it is competent for a court of equity to arrest all proceeding by execution, against the slaves in question, until the rights of the donee shall be settled, we think will not be questioned; and in setting apart her share, it will be most proper to assign to her those that remain in the trustee's hands, looking to those that have been sold, in order to ascertain their relative value, or to make good any deficit in what the *cestui que trust* may be entitled to on settlement.

Without a particular application of the points considered, to the questions raised upon the bill of exceptions, it is obvious that the circuit court erred in the charge given in respect to the legal effect of the division of the property. The judgment is consequently reversed, and the cause remanded.